UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

RICHARD CLEVELAND YOUNG,

    Plaintiff,

v.                            407CV043

JCB MANUFACTURING, INC.,

    Defendant.

## ORDER

### I. INTRODUCTION

Typically, cases that settle in this Court go away quietly. Not this case. Instead, the Court is faced with a contempt motion filed by an attorney who withdrew from, and thus was no longer in this case, *before* she filed that motion.[1] Worse, she was the plaintiff's attorney, and her motion seeks to enforce a settlement reached before she withdrew. Yet now the plaintiff *himself* (proceeding *pro se*) moves the Court to reconsider the settlement (and resulting dismissal of this case) itself. Doc. # 34. Standing, jurisdiction, representation, (etc.) questions thus must be addressed.

### II. BACKGROUND

Plaintiff Richard Cleveland Young originally proceeded *pro se* when he filed this employment-discrimination case against JCB Manufacturing, Inc. (JCB). Doc. ## 1-3 (original Complaint; Magistrate Judge's Order granting him leave to proceed *in forma pauperis*). Months later, he obtained the representation of attorney Tameka A. West, doc. # 7, who then filed an Amended Complaint for him. Doc. # 23.

Later, the parties *seemingly* reached a settlement. In fact, JCB moved to enforce it -- on the same day that West moved to withdraw from representing Young. Doc. ## 27,[2] 28. The Court granted JCB's settlement-enforcement motion on 4/4/08, and West's withdrawal motion on 5/21/08. Doc. ## 30, 31. Consistent with its then long-standing practice once settlement is announced, the Court (on 5/22/08) entered a "*Kokkonen* Order"[3] that invited the parties to file their settlement if they wanted the Court to retain jurisdiction to enforce it.[4] Doc. # 32. Otherwise, that Order dismissed the case *with prejudice*. *Id.*

No settlement has since been filed.

On 5/27/08 West, then *out* of the case since 5/21/08, moved the Court to impose contempt and other sanctions against JCB because JCB failed to fulfill the very settlement agreement that JCB itself had successfully moved to enforce. Doc. # 33. On 5/29/08, West's now ex-client (Young) moved the Court to reconsider the *Kokkonen* dismissal Order, basically claiming that he did not agree to settle the case and thus see it dismissed. Doc. # 34. West responded to that motion. Doc. # 35.

But Young failed to serve JCB with his motion, so the Court directed service of it upon

---

[1] *See* doc. # 28 (3/31/08 motion by plaintiff's counsel to withdraw from representing the plaintiff); # 31 (5/21/08 Order granting same); # 32 (5/22/08 Order dismissing case); # 33 (plaintiff's now *ex*-counsel's 5/27/08 motion to hold defendant in contempt).

[2] JCB's motion cites to exhibits that are not in the record.

[3] *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994) (courts may retain post-dismissal jurisdiction to enforce settlements).

[4] In a later case the Court questioned that Form Order's jurisdictional underpinnings. *See Heape v. Flanagan*, 2008 WL 2439736 (S.D.Ga. 6/9/08) (unpublished). It has since modified that Form Order -- for use in future cases -- to address those concerns. The "old" Form Order currently remains entered in this case.

JCB. Doc. # 36. JCB now opposes both the Young and West motions. Doc. # 37. Again, standing, jurisdiction, representation (etc.) questions thus must be addressed.

## III. ANALYSIS

### A. Jurisdiction

Normally, a district court loses jurisdiction when it dismisses a case, *see Heape*, 2008 WL 2439736 at * 2, but in certain instances (*e.g.* by statute, rule or case precedent like *Kokkonen*) it can retain limited jurisdiction to act despite the dismissal. *Id.* Here Young has impliedly invoked F.R.Civ.P. 59(e) by timely (*i.e.* within the 10 days provided by that rule) moving the Court to reconsider its dismissal order.[5]

Therefore, this Court has jurisdiction to consider Young's reconsideration motion, which encompasses the issues discussed below. To that end, the Court grants his reconsideration motion and thus will reconsider the dismissal.

### B. "Workers' Compensation" Wrinkle

A prime cause of the controversy here arises from state workers' compensation (WC) law, specifically a provision that prevents workers from settling their workers' compensation claims without Workers' Compensation Board oversight:

"[n]o contract or agreement, written, oral, or implied, nor any ... other device shall in any manner operate to relieve any employer in whole or in part from any obligation created by this chapter except as otherwise expressly provided in this chapter." OCGA § 34-9-10. OCGA § 34-9-15 provides the sole method by which claims arising under the Workers' Compensation Act may be settled. Under that section, settlements must provide for payments in the time and manner specified in the Workers' Compensation Act and must be filed with and approved by the State Board of Workers' Compensation.

*Caldwell v. Perry*, 179 Ga.App. 682, 683 (1986); *see also id.* (Worker's release of employer from liability for various claims that was never submitted to or approved by WC Board was void and had no effect as to any claim by that employee for workers' compensation benefits, regardless of whether that claim was pending or contemplated when settlement was attempted), cited in GA. SETTLEMENTS LAW AND STRATEGIES § 12-2 (*Necessity of approval of court or board*) (2d ed. 2007); *see also id.* § 12-4 (*Operation and effect in general*) (procedure for judicial enforcement of a settlement approved by the WC Board); 12 GA. JUR. WORKERS' COMPENSATION § 9:24 (Aug. 2008).

The net effect of this body of law is this: Employees can *not* waive their WC rights via mere settlement agreement. *Fountain v. Shoney's Big Boy, Inc.*, 168 Ga.App. 489, 490 (1983) (any agreement between the parties as to the inapplicability of the Workers' Compensation Act to tort claim would be contrary to public policy as expressed in the Act, and, therefore, is void and unenforceable).

---

[5] *See Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) ("A post-judgment motion may be treated as made pursuant to either Fed.R.Civ.P. 59 or 60 -- regardless of how the motion is styled by the movant -- depending on the type of relief sought"); *McGregor v. Board of Com'rs of Palm Beach County*, 956 F.2d 1017, 1020 (11th Cir. 1992) ("[A] motion for rehearing is interpreted as a Fed.R.Civ.P. 59(e) motion"); *U.S. v. Hicks*, 286 F.Supp.2d 768, 769 (E.D.La. 2003) (a reconsideration motion is treated as a Rule 59(e) motion if filed within 10 days of judgment).

The dispute at this juncture, then, is whether Young validly settled his employment-discrimination *and* WC claims with JCB. The matter is further complicated because Young's attorney withdrew from representing him *during* the attempted settlement. The Court will turn to her filings first.

**C. Tameka A. West**

An attorney either represents a client or not. Like pregnancy, there is no in between position. In a footnote to her 5/27/08 contempt motion against JCB (for JCB's failure to comply with the settlement agreement), West explains that on 5/22/08, "the Court entered an order granting [her 3/31/08] Motion to Withdraw from the case. However, [she chose to file] this Motion for Contempt since [JCB] has refused to comply with the [4/4/08] Order enforcing settlement." Doc. # 33 at 2 n. 2. In other words, even though she no longer represents Young, JCB has misbehaved ("refused to comply"), so that *somehow* grants her authority to *re*-represent Young -- without his consent -- and thus reenter this case to litigate on his behalf.

Of course, legal representation does not work that way, and West has cited *no* valid reason to reenter this case and re-represent a client from whom (via this Court's 5/22/08 Order), just 5 days before, she formally withdrew. Having failed to show any authority to represent Young, West lacked standing to file *anything* on his behalf. Her "contempt" motion (doc. # 33) thus will be disregarded to that extent.

West has, however, filed a colorable Notice of Attorneys' Lien pursuant to O.C.G.A. § 15-19-14 for fees and expenses. Doc. # 28 at 3 ("Moreover, the Plaintiff currently owes the undersigned counsel in excess of $17,403.83 for attorney fees and costs based on a written fee contract"); *see also* doc. # 35 at 11 n.12, doc. # 35-3, exh. 4 (3/18/08 email) and exh. 6 (3/21/08 email); *Harris v. Carriage House Imports, Inc.*, 2008 WL 513337 at * 2 (N.D.Ga. 2/22/08) (unpublished) (same lien filed by plaintiffs' counsel in a discrimination case). Her lien acts for the limited purpose of preserving her right to recover any attorneys fees and expenses from any recovery Young makes in this case. But West otherwise cites no other authority to litigate on Young's behalf (*i.e.* seek sanctions against JCB).

It follows that West's 6/6/08 response (doc. # 35) to Young's reconsideration motion also must be disregarded except for lien-preservation purposes. Meanwhile, West is directed to abstain from filing anything further in this case unless authorized by law (*see, e.g.*, § 15-19-14 (attorney lien statute)) or by leave of this Court.

In that regard, the Court construes her filings as an implied motion for leave to file, and grants her leave *nunc pro tunc* to the filing dates of her post-withdrawal motions, to file any and all briefs, papers, etc., necessary to protect her attorney lien and professional reputation.

**D. The Breakdown**

Before this Court granted West's withdrawal motion, she wrote a comprehensive letter to JCB's counsel, a copy of which is now validly before the Court as an attachment to *Young's* own reconsideration motion. *See* doc. # 34, online docket page 39. Summarized, it says:

● Young held both a worker's compensation claim *and* a separate, employment-discrimination claim against JCB;

● West represented Young only on the

3

employment-discrimination claim, while attorney Cletus Bergen represented him on the worker's compensation claim;

• negotiations with JCB yielded a settlement agreement, but the parties' minds did not meet;

• in fact, as evidenced by JCB's 3/31/08 Motion to Enforce settlement, JCB was aware that Young refused to sign the formal settlement agreement that JCB prepared after the parties verbally reached an agreement to settle on 3/13/08;

• prior to JCB's filing of its 3/31/08 Motion to Enforce, West specifically told JCB's attorney, Jennifer Dickinson, that Young would not sign JCB's prepared agreement because he intended on pursuing his previous workers' compensation claims against JCB;

• nevertheless, this Court did not wait for Young's response to JCB's motion[6] and granted JCB's enforcement motion on 4/4/08;

• subsequently, Dickinson insisted that Young sign the release agreement before JCB would release the settlement funds to him;

• clearly under these circumstances, West contended, Young did not intend to abandon his worker's compensation claims against JCB by signing a release agreement that JCB already had enforced by the Court;

• further, the Georgia Workers' Compensation Act does not bar employment-related actions, O.C.G.A. § 34-9-11, so nothing has prevented Young from simultaneously seeking redress under the state workers' compensation act as well as his employment discrimination case pursuant to federal law; and under O.C.G.A. § 34-9-10, no contract or agreement written, oral, or implied can relieve any employer, including JCB, of its workers' compensation obligations;

• accordingly, Georgia's workers' compensation laws prohibit a waiver of JCB's obligations by virtue of a release agreement in an employment discrimination case;

• JCB thus has been acting in bad faith, West therefore would file a motion for contempt and other sanctions, and JCB therefore should pay Young his settlement *without* extracting a waiver of his right to pursue worker's compensation from JCB.

*Id.* (paraphrased).

That letter was written on 5/6/08. In a 5/7/08 response letter, JCB's counsel stated: "JCB understands that Mr. Young cannot be required to waive a workers' compensation claim as part of the release of an employment discrimination claim." Doc. # 33 exh. 4.

As indicated above, West (via this Court's 5/22/08 Order) later withdrew from representing Young. In her withdrawal motion, she represented that she could

> no longer effectively represent [him] based on his continual refusal to accept counsel's legal advice and failure to cooperate with the handling of this case.

---

[6] The docket confirms this. And given what transpired thereafter, it is clear that this Court erred in failing to await Young's response.

4

In fact, Plaintiff has repeatedly discussed the case with other individuals and/or attorneys without counsel's approval, which has attributed to Plaintiff's refusal to accept the undersigned counsel's legal advice. Additionally, on or about [2/23/08], [Young] contacted opposing counsel regarding the case without the undersigned counsel's knowledge or permission.

Further, the undersigned counsel has repeatedly attempted to contact Plaintiff at his last known contact numbers, and the service was disconnected. On or about [3/18/08] the undersigned attorney sent the attached Notice of Intent to Withdraw to Plaintiff complying with the requirements of Local Rule 83.7, which is attached hereto as Exhibit 1. On or about [3/25/08] Plaintiff contacted the undersigned via telephone to discuss the case, but he refused to provide an alternate contact number to the undersigned counsel as to where he could be reached to further discuss the case. On or about [3/26/08], the Plaintiff sent a letter to undersigned counsel via fax indicating that he consented to the withdrawal and intended to seek other counsel in the case....

Doc. # 28 at 2-3.

So, although West withdrew for a variety of reasons, her client's conduct has not altered the basic fact flow reflected in the billeted points above, and JCB's response brief does not negate much of it. In fact, JCB essentially says that

● before West negotiated a binding settlement on Young's behalf, Young had -- before he filed this case -- dismissed his workers compensation attorney and abandoned his workers compensation claims;

● during JCB's settlement negotiations with West, West stated that she did not represent Young on his WC claims and was unaware of whether he would pursue them;

● JCB prepared and emailed a formal settlement agreement to West on 3/19/08 and included a provision under which Young would represent that he was aware of no other pending claim against JCB and did not know of anyone who had filed or was planning to file a claim against JCB;

● Young signed the agreement on 4/18/08; he thus *represented* that he was aware of no other (hence, that would include a WC) pending claim against JCB and did not know of anyone who had filed a claim against JCB;

● JCB was then fully prepared to release the settlement proceeds after 7 days elapsed (to comply with federal discrimination law time periods);

● yet Young had found a new WC attorney and initiated a WC claim on 4/3/08, *before* he signed the JCB settlement representing to the contrary;

● Young then disavowed the agreement in his Motion to Reconsider (doc. # 34) in this Court;

● thus, JCB is abstaining from releasing the settlement funds until it receives direction from this Court.

Doc. # 37 at 1-3.

JCB thus does not quarrel with West's legal points, only that it relied on Young's representation that he knew of no "other" pending claim against JCB and that he did not know of anyone who had filed "a" claim (which of course would include a WC claim) against JCB.

Of course, that is just a cagey way of contending that Young was waiving his WC claim in exchange for a settlement payment from JCB, so this Court should hold him to that WC-claim waiver. That, in turn, is too clever by half, in that it attempts to achieve what Georgia law forbids: waiver of Young's WC claims without WC-Board oversight. Meanwhile, despite Young's rift with West, he has been savvy enough to move this Court to reconsider and argue that he never agreed to waive his WC rights when he agreed to settle his employment discrimination claim with JCB.

At the same time, Young fails to acknowledge that on 4/21/08 he in fact signed (and thus accepted) the West-JCB negotiated settlement agreement. *See* doc. # 35-4, exh. 12. That agreement expressly provides that JCB will pay him (to be split with West to cover her fees) $30,000. The agreement will not cause him to release his WC claims because they cannot be released as a matter of law. JCB, conceded this.

Young is bound to the agreement by both his signature and page-by-page initials as well as his post-signature, agreement-affirming conduct -- his inquiry with West about his settlement check. Doc. # 35 at 7; *see also* doc.# 35-4, exh. 12 (4/21/08 settlement agreement). And West assured him (via 3/26/08 letter) that he was not waiving any WC claims by signing the agreement. Doc. # 35-3, exh. 9.

This much is now clear: The parties' minds met on settling Young's *federal* and any non-WC state law claims. That much of the settlement is now enforceable. JCB's (the settlement agreement's drafter) mere inclusion of a passage that Young waives any state law claims (doc. # 35-4, exh. 12 (Agreement) ¶ 3(a)) could not and thus did not secure the release of Young's WC claim. JCB obviously tried to (via its settlement document) dispose of *all* of Young's claims through the instant settlement by having Young affirm that he advanced and knew of no "other" claims. Yet just as obviously, JCB knew that Georgia law forbids enforcement of any settlement agreement that purports to release WC claims.

JCB presently "contends that a valid, enforceable agreement to settle exists in this case." *Id.* at 7. It seeks only clarification from this Court before it pays out on it. *Id.* The Court therefore will clarify matters. First, JCB cannot be held in contempt of this Court because it justifiably seeks resolution of an uncertain settlement here. Second, Young signed the settlement but then changed his mind -- on the *amount* of the settlement -- and not because of any WC concern. *See, e.g.*, doc. # 35-3, exh. 3, 4, 8, 9. Third, JCB has a remedy if in fact it is true (as JCB contends, *see* doc. # 35-4, exh. 14 (4/30/08 ltr to C. Bergen)), that Young's WC claim is in any way fraudulent. *See* O.C.G.A. § 34-9-18(b) (cited in JCB counsel's 4/30/08 ltr to C. Bergen).

Upon Young's reconsideration motion, then, the Court does not vacate its settlement-dismissal order, doc. # 32, and instead now exercises its jurisdiction to enforce it. In so doing, it is clear that Young, now proceeding *pro se*, does not wish to comply with the $30,000 JCB settlement. He wants more than that. Yet, he is bound to the $30,000 agreement that he signed, with advice of counsel.

Equally clear is the fact that JCB still seeks enforcement of the settlement, even though it concedes that Young's WC claim is not released. Doc. # 37 at 7. West, meanwhile, understandably wants her fees and expenses out of any JCB settlement check to Young.

The Court therefore reaffirms its prior settlement-enforcement Order, doc. # 30, with the understanding that Young's WC claim shall not be waived or in any way released, and that attorney West may intervene in the settlement payout as necessary to enforce her retaining lien. In the meantime, this case remains dismissed.

## IV. CONCLUSION

Plaintiff Richard Cleveland Young's F.R.Civ.P. 59(e) motion (doc. # 34) to reconsider is *GRANTED* but the Court does not vacate its dismissal Order, doc. # 32. Tameka A. West's contempt/sanctions motion (doc. # 33) is *DENIED*. Finally, the Court *REAFFFIRMS* its settlement-enforcement Order, doc. # 30, and this case remains closed.

This  25  day of August, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA